# RETAIL INSTALLMENT CONTRACT
## VIRGINIA - SIMPLE INTEREST

**DATE:** APRIL 20, 2005
**ACCOUNT NUMBER:** 10496140

**BUYER (AND CO-BUYER) NAME AND ADDRESS:**
CHRISTOPHER BROWN
BARBARA A CARL
606 POPLAR DR
FALLS CHURCH    VA 22046

**CREDITOR (SELLER) NAME AND ADDRESS:**
KOONS OF TYSONS CORNER
2000 CHAIN BRIDGE RD
VIENNA    VA 22182

Creditor ("us" and "we") agrees to sell; and buyer and co-buyer, if any, (collectively "Buyer", "You" and "Your") after being quoted both a cash and credit price, agrees to buy from Creditor on a credit price basis ("Total Sale Price"), subject to the terms and conditions set forth on both the front and back of this contract, the vehicle ("Vehicle") described below. You acknowledge delivery and acceptance of the Vehicle.

**DESCRIPTION OF VEHICLE:** [X] NEW [ ] USED
YEAR: 2005   MAKE: CHRYSLER   MODEL: 300C
VIN: 2C3AA63H45H667165
Description of Trade-In: N/A   YEAR & MAKE: N/A   MODEL: N/A

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of Your credit as a yearly rate. | The dollar amount the credit will cost You. | The amount of credit provided to You or on Your behalf. | The amount You will have paid after You have made all payments as scheduled. | The total price of Your purchase on credit, including Your downpayment of $40,000.00 |
| 19.75 % | $ 7,477.21 | $ 12,862.79 | $ 20,340.00 | $ 60,340.00 |

**Payment Schedule** - Your payment schedule will be...

| NO. OF PAYMENTS | AMOUNT OF EACH PAYMENT | WHEN PAYMENTS ARE DUE | NO. OF PAYMENTS | AMOUNT OF EACH PAYMENT | WHEN PAYMENTS ARE DUE |
|---|---|---|---|---|---|
| 60 | $ 339.00 | [X] MONTHLY (BEGINNING DATE OF PAYMENT) MAY 20, 2005 | | $ | [ ] MONTHLY (BEGINNING DATE OF PAYMENT) |

**Prepayment.** If You pay off early, You will not have to pay a penalty.

**Late Charge.** If a payment or part thereof is more than 10 days late You will be charged 5% of such unpaid amount.

**Security Interest.** You are giving us a security interest in the Vehicle being purchased.

**Filing Fees $** N/A

**Contract Provisions.** See the back of this contract for any additional information about security interests, nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

"E" means Estimate

YOU ARE REQUIRED TO HAVE PHYSICAL DAMAGE INSURANCE. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT. YOU MAY OBTAIN VEHICLE INSURANCE FROM AN INSURANCE COMPANY OF YOUR CHOICE.

CREDIT LIFE, CREDIT DISABILITY, GUARANTEED AUTOMOTIVE PROTECTION COVERAGE AND OTHER OPTIONAL INSURANCE/COVERAGE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM. THE PURCHASE OF CREDIT INSURANCE AND OTHER VOLUNTARY INSURANCE IS NOT A FACTOR IN GRANTING CREDIT. YOU HAVE THE RIGHT TO USE ALTERNATIVE COVERAGE OR PURCHASE INSURANCE ELSEWHERE. YOU HAVE THE RIGHT TO CANCEL ANY INSURANCE POLICIES PURCHASED.

[ ] CREDIT LIFE   PREMIUM $ N/A   INSURER N/A   INSURED(S) N/A
[ ] MECHANICAL BREAKDOWN   PREMIUM $ N/A   TERM N/A   INSURER N/A

[ ] CREDIT DISABILITY   PREMIUM $ N/A   INSURER N/A   INSURED(S) N/A
[X] TYPE GAP INS.   TERM 60   PREMIUM $ 600.00   INSURER/PROVIDER AMERICAN HERITAGE IN

1. **Cash Price**
   a. Vehicle (including accessories, delivery, installation charges, if any) ......... $43,980.00
   b. Sales Tax ......... $1,487.52
   c. Service Contract (optional) ......... N/A
   d. Cash Price ......... $45,467.52

2. **Downpayment**
   a. Downpayment ......... $40,000.00
   b. Manufacturer's Rebate ......... N/A
   c. Gross Allowance on Trade-In $ N/A
   d. Pay-off on Trade-In $ N/A
   e. Net Allowance on Trade-In ......... N/A
   f. Downpayment ......... $40,000.00
   If less than $0, disclose on Line 3a and enter $0 for the Downpayment.

3. **Unpaid Balance of Cash Price** ......... $5,467.52
   a. Unpaid Trade-In Lien Amount to be Financed** $ N/A
   ** Paid to:

4. **Other Charges Including Amounts Paid to Others on Your Behalf*:**
   a. Paid to Public Officials for:*
      (i) Other Taxes ......... N/A
      (ii) Filing Fees ......... N/A
      (iii) License Fees ......... N/A
      (iv) Certificate of Title Fees ......... $10.00
      (v) Registration Fees ......... $31.50
   b. Paid to: KOONS OF TYSONS
      For: CLR BLE LIC TAX ......... $74.77
   c. Paid to: CHRYSLER SERVICE
      For: EXTENDED SERVICE ......... $6,390.00
   d. Paid to: AMERICAN HERITAG
      For: DEF CNC, INS. ......... $600.00
   e. Paid to: Seller KOONS OF TYSONS CORN
      For: Processing Fee ......... $289.00
   f. Paid to Insurance Companies for Insurance for:*
      (i) Optional Mechanical Breakdown ......... N/A
      (ii) Optional Credit Life ......... N/A
      (iii) Optional Credit Accident & Health ......... N/A
   g. Subtotal ......... $7,395.27

5. **Amount Financed** ......... $12,862.79

*Seller may be retaining a portion of these amounts.

**Primary Use of Vehicle** - You agree to use the Vehicle primarily for personal, family or household purposes. However, if the following box is checked, You will use the Vehicle primarily for business or commercial purposes. [ ]

## NO LIABILITY INSURANCE INCLUDED

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT, INCLUDING IMPORTANT ARBITRATION DISCLOSURES AND PRIVACY POLICY ON THE BACK OF THIS CONTRACT.

Notice to the Buyer: 1. Do not sign this contract before You read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract You sign. Keep it to protect Your legal rights. BUYER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT.

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and retain its right to receive a part of the finance charge.

THIS CONTRACT IS ACCEPTED BY THE CREDITOR (SELLER) AND ASSIGNED TO DAIMLERCHRYSLER SERVS NA LLC ("ASSIGNEE") IN ACCORDANCE WITH THE TERMS OF THE ASSIGNMENT SET FORTH ON THE REVERSE HEREOF.

CREDITOR (SELLER): KOONS OF TYSONS CORNER
DATE: MAY 0 3 2005
TITLE: BUSINESS MANAGER

ORIGINAL

## TERMS AND CONDITIONS

1. **PAYMENT:** You agree to make all payments when they are due. Accepting a late payment or late charge does not change Your payment due date. You may prepay Your debt without penalty. This is a simple interest contract. Your final payment may be larger or smaller, depending on whether You make payments late or early. Your payment will be applied first to the Earned and Unpaid part of the Finance Charge, then to the unpaid Amount Financed and then to any other amounts due. The Finance Charge is earned by applying the Annual Percentage Rate divided by 365 to the unpaid Amount Financed for the number of days outstanding.

2. **ADDITIONAL CHARGES:** You agree to pay a late charge as shown on the front if a payment or any part is more than 10 days late.

3. **SECURITY AGREEMENT:** You give us a security interest in the Vehicle and all parts or other goods put on the Vehicle; all money or goods received for the Vehicle; and all insurance policies and service contracts financed by You in this contract, and any rebate or refunds which relate to those policies or contracts. This also secures payment of all amounts You owe in this contract.

4. **USE OF VEHICLE:** You agree to maintain the Vehicle in good condition and obey all laws; keep the Vehicle free from the claims of others; and obtain our written consent prior to transferring Your equity in the Vehicle, subleasing or renting the Vehicle, or taking the Vehicle outside the United States for more than thirty (30) days.

5. **WARRANTIES:** If the Vehicle is for personal use and we, or the Vehicle's manufacturer, extend a written warranty or service contract covering the Vehicle within 90 days from the date of the contract, You get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle. Otherwise, You agree that there are no such implied warranties.

6. **INSURANCE:** You must insure Yourself and us against loss or damage to the Vehicle and provide us proof of that insurance. We must approve the type and amount of insurance. Whether or not the Vehicle is insured, You must pay for it if it is lost, damaged or destroyed. You agree that we may endorse Your name upon any check or draft representing payment made by an insurance company for a loss related to the Vehicle.

7. **DEFAULT:** You will be in default if You do not make a payment on or before 10 days following its due date; You do not keep any promise in this contract; You file a bankruptcy petition or one is filed against You; Your Vehicle is seized by any local, state or federal authority; You provided information on the credit application which was not true and accurate; or You breach any promise, representation or warranty You have made in this contract.

If we repossess Your Vehicle, we may:

Require You to pay the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due; sue You to collect the amount You owe; without the use of force or breach of the peace, enter the premises where the Vehicle may be, and lawfully repossess (take back) the Vehicle, including equipment and accessories; take goods found in the Vehicle and hold them for You for thirty (30) days, and if You do not claim the goods during that period, we can dispose of them and have no liability to You; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty or other optional insurance financed by You under this contract, and apply the refunded premium to Your outstanding balance.

If we repossess the Vehicle, we will give You a notice. It will state that You may redeem the Vehicle and the amount needed to redeem. You may redeem the Vehicle until we sell it. The money from the sale, less allowed expenses, will be applied to the amount You owe. If there is any money left, we will pay it to You. If the money from the sale is not enough, You will pay what is still owed to us plus interest. Allowed expenses are those which we are entitled to by law in any lawful activity to obtain possession of, recondition, and dispose of the Vehicle after default. If You default, and we hire an attorney who is not one of our salaried employees to collect what You owe, You agree to pay reasonable attorney's fees and court costs.

8. **SEVERABILITY:** Notice to You is sufficient if mailed to You at the address known by us. If the law does not allow a part of this contract, that part will be void. The remaining parts will be enforceable. If there is more than one Buyer, their obligation shall be joint and several. Any delay or omission by us in enforcing our rights shall not act as a waiver. To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.

9. **DEFERRED PAYMENTS:** Any change in this contract must be in writing and signed by all the parties, however, if permitted by law, extensions, deferrals and due date changes may be agreed to orally by You and us, and we will send You a written confirmation of our agreement. Interest will continue to accrue until the next payment is received. Any deferral would not extend any purchased insurance coverage You have.

10. **POWER OF ATTORNEY:** You appoint us, through our appointed officer or employee, as Your attorney-in-fact. Your grant in this power of attorney is coupled with an interest, and is irrevocable until all obligations You owe under this contract are paid in full. As Your attorney-in-fact, we can sign on Your behalf all Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect our security interest in the Vehicle; transfer Your entire interest in the Vehicle to any other person as part of a repossession or sale; act on Your behalf in any insurance matter relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on Your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty or other optional insurance financed by You under this contract, and apply the refunded premium to Your outstanding balance to the Vehicle.

11. **GOVERNING LAW:** This contract shall be governed by the laws of the State of Virginia except, if the Vehicle is repossessed, then the law of the state where the Vehicle is repossessed will govern the repossession. Repossession effected through legal process will be governed by the laws of the state in which such process is brought.

**NOTICE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

The preceding NOTICE applies if the Vehicle is a used vehicle as shown on the front of this contract and if this contract is a contract of sale under the FTC Used Motor Vehicle Trade Regulation Rule.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies to goods or services obtained primarily for personal, family or household use.

## IMPORTANT ARBITRATION DISCLOSURES

The following Arbitration provisions significantly affect Your rights in any dispute with us. Please read this carefully before You sign the contract.

For purposes of the Arbitration provisions, the term "us" refers to the Buyer and Co-buyer, and Creditor and Creditor's successors and assignees.

1. If either of us chooses, any dispute between us will be decided by arbitration and not in court.
2. If a dispute is arbitrated, each of us will give up the right to a trial by a court or a jury trial.
3. You agree to give up any right You may have to bring a class-action lawsuit or class arbitration, or to participate in either as a claimant, and You agree to give up any right You may have to consolidate Your arbitration with the arbitration of others.
4. The information that can be obtained in discovery from each other or from third persons in an arbitration is generally more limited than in a lawsuit.
5. Other rights that each of us would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise, including any dispute over the interpretation, scope, or validity of this contract, the arbitration clause or its arbitrability of any issue), between us or Creditor's employees, agents, successors or assigns, which arise out of or relate to a credit application, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at the election of either of us (or the election of any such third party), be resolved by a neutral, binding arbitration and not by a court action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor, which may be obtained by mail from the American Arbitration Association, Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or on the Internet at http://www.adr.org/, or the applicable rules of JAMS, or its successor, which may be obtained by mail from JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614 or on the Internet at http://www.jamsadr.com, or the applicable rules of the National Arbitration Forum, or its successor, which may be obtained by mail from The Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191, or on the Internet at http://www.arbitration-forum.com.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. The arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which You reside. If You demand arbitration first, You will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent You from requesting that the applicable arbitration entity reduce or waive Your fees, or that we voluntarily pay an additional share of said fees, based upon Your financial circumstances or the nature of Your claim.

This contract evidences a transaction involving interstate commerce. Any arbitration under this contract shall be governed by the Federal Arbitration Act (9 USC 1, et seq). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both You and Creditor and Creditor's successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither of us waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court. If any provision of this arbitration agreement is found to be unenforceable or invalid, that provision shall be severed and the remaining provisions shall be given full effect as if the severed provision had not been included.

## PRIVACY POLICY OF DAIMLERCHRYSLER SERVICES NORTH AMERICA/CHRYSLER FINANCIAL/DCFS TRUST ("we," "us," and "our")

**Categories of Information We Collect:**
We collect nonpublic personal information about You from the following sources:
- Information we receive from You on applications and other forms
- Information about Your transactions with us, our affiliates, or others; and
- Information we receive from consumer reporting agencies and other outside sources.

**Categories of Information We Disclose:**
We may disclose all of the information that we collect, as described above.

**Categories of Affiliates and Third Parties to Whom We Disclose Information About Current and Former Customers:**
We may disclose all of the information that we collect, which relates to our transactions or experiences with You among our affiliated companies. Companies, which are affiliated with us, include any company that controls us, any company we control, or any company under common control with us. In other words, it is any company that is in our "family of companies."

We may disclose all of the information that we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

**We may disclose** all of the information that we collect, as described above, with other nonaffiliated third parties as permitted by law.

**Opting Out of Disclosures:**
Because we only disclose information to nonaffiliated third parties as permitted by law or through a joint marketing agreement, opt-outs of such disclosures are not required.

**Policies and Practices to Protect the Confidentiality and Security of Nonpublic Personal Information:**
We restrict access to nonpublic personal information about You to those employees, outside contractors, and businesses which jointly market our products and services, who need or may need to know that information to provide products or services to You. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to protect Your nonpublic personal information.

**Privacy Policy Changes and Future Disclosures:**
We may from time to time change our Privacy Policy. Therefore, we reserve the right to disclose any and all information to our affiliates and other nonaffiliated third parties as permitted by law.

## ASSIGNMENT

In return for purchase of this Contract, the Seller sells to Assignee the entire interest in this Contract; and authorizes Assignee to collect and discharge obligations of the Contract and its assignment.

Seller represents and warrants to Assignee that: (a) this Contract arose out of the sale of the disclosed Vehicle; (b) this Contract is legally enforceable against the Buyer; (c) the Buyer has the capacity to contract and paid the downpayment; (d) the Buyer is purchasing the Vehicle for the Buyer's use; (e) the Contract contains an accurate representation of statements made by the Buyer; there is no inaccuracy or misrepresentation in any statement made by or to the Buyer of the Buyer, including those in the credit application, furnished to Assignee by Seller; (f) all disclosures required by law were made to the Buyer before signing this Contract; (g) no material fact relating to the Vehicle was misrepresented; (h) all insurance documentation will be delivered by the Buyer within legal time limits; (i) there is no lack invalidates or reduces the value of this Contract; (j) Buyer obtained Physical Damage Insurance on the Vehicle per Assignee's requirements; (k) Assignee has a first lien on the Vehicle title; (l) this will be applied for within 10 days of the delivery of the Vehicle; (m) any co-buyers were provided notices required by law; (n) Seller will perform all warranty work that was agreed to with Buyer; and (o) the Seller is licensed as required by law.

Should any of the above representations and warranties prove to be false or incorrect in any respect, and without regard to Seller's knowledge or lack of knowledge, or Assignee's reliance, Seller unconditionally, and with waiver of all defenses, agrees to pay Assignee immediately on demand the full unpaid balance of this Contract, in principal, interest, costs, expenses, and attorney's fees. Seller further agrees under all circumstances to indemnify, and to save and to hold Assignee, and its parent and affiliates, and its and their officers, employees, agents and attorneys, harmless from any and all liability, costs, and expenses (including without limitation, reimbursement of attorney's fees and court costs), resulting from the assertion of any claim, counter-claim, defense, or recoupment by Buyer with respect to the Vehicle, the purchase of the Vehicle, the origination, content, completion and execution of this Contract, or in any way related thereto.

Seller agrees to the initialed paragraphs below. If none are initialed, the assignment is made on a "Full Repurchase Obligation" basis.

_____ **Without Recourse or Payment Obligation**, except in the circumstances noted above.

_____ **Full Payment Obligation** - Should Buyer default under this Contract at any time, Seller unconditionally, and with waiver of all defenses, agrees to pay Assignee immediately on demand the full unpaid balance owing under this Contract, in principal, interest, costs, expenses, and attorney's fees.

_____ **Limited Payment Obligation** - Should Buyer default under this Contract at any time, Seller unconditionally, and with waiver of all defenses and rights of subrogation, agrees to pay Assignee immediately on demand the unpaid principal balance then owed under this Contract up to a maximum of $ _____, together with all interest, costs, expenses, and attorney's fees that may be owed by Buyer.

_____ **Full Repurchase Obligation** - Should Buyer default under this Contract at any time and Assignee obtains possession of the Vehicle by any means, Seller unconditionally, and with waiver of all defenses, agrees to purchase the Vehicle from Assignee at private sale for an amount equal to the full unpaid balance then owed under the Contract, in principal, interest, costs, expenses, and attorney's fees.

_____ **Limited Repurchase Obligation** - Should Buyer default under this Contract during the first _____ months of the Contract term, and Assignee obtains possession of the Vehicle by any means, Seller unconditionally, and with waiver of all defenses, agrees to purchase the Vehicle from Assignee at private sale for an amount equal to the then unpaid balance under the Contract, in principal, interest, costs, expenses and attorney's fees.